# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

———

Argued December 2, 2011         Decided March 6, 2012

No. 09-5085

IN RE: ANTOINE JONES,
PETITIONER

———

On Petition for Writ of Mandamus

———

*Anthony F. Shelley*, appointed by the court, argued the cause as *amicus curiae*. With him on the briefs were *Dawn E. Murphy-Johnson*, *Michael N. Khalil*, and *Jeffrey M. Hahn*.[*]

*Antoine Jones*, *pro se*, filed a brief.

*Alexander D. Shoaibi*, Assistant U.S. Attorney, argued the cause for respondent. With him on the briefs were *Ronald C. Machen*, *Jr.*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney.

Before: BROWN, *Circuit Judge*, and WILLIAMS and GINSBURG, *Senior Circuit Judges.*

Opinion for the Court filed by *Circuit Judge* BROWN.

———

[*] The Court thanks the *amicus curiae* for their able assistance in this case.

BROWN, *Circuit Judge*:  In 2007, a jury acquitted Antoine Jones on a number of drug-related charges, but failed to reach a verdict on conspiracy to distribute and possession with intent to distribute cocaine and cocaine base.  The government retried Jones on the unresolved conspiracy count and obtained a conviction in 2008.  The court imposed a life sentence.

Between the first and second trials, Jones filed a *pro se* complaint alleging federal officials violated the Fourth Amendment by conducting warrantless searches of his apartment and a warehouse leased in his name.  Jones sought $1 million in damages and an investigation of the Immigration and Customs officials that performed the searches.

On May 28, 2008—after Jones' conviction in the second trial—the district court dismissed Jones' civil case *sua sponte*.  Under *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994), a plaintiff seeking to recover damages for harm "caused by actions whose unlawfulness would render a conviction or sentence invalid . . . must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus."  In the district court's view, *Heck* mandated dismissal of Jones' case because Jones had not "demonstrated that his conviction or sentence ha[d] already been invalidated," and his Fourth Amendment claims, "if proved, would render his conviction invalid."  *Jones v. Gikas*, No. 07-1068, 2008 WL 2202264, at *1 (D.D.C. May 27, 2008).

More than eight months after that dismissal, on January 31, 2009, Jones filed a document in district court styled as a "Motion for Leave to File Notice of Appeal *pro se* by

Plaintiff" (the "January Motion"). Jones, who had been incarcerated since 2005, claimed he had never received a notice of dismissal, and had only become aware of the dismissal when he requested and obtained a copy of the case docket in December 2008. He asserted he requested a copy of the dismissal opinion after seeing the docket, received the opinion on January 13, 2009, and filed the January Motion shortly thereafter. Based on those circumstances, he asked the "Court of Appeal to accept [his] 'EXCUSABLE' time[] delay and [his] *pro se* Brief on this issue." His "*pro se* Brief" argued primarily that dismissal under *Heck* was improper because his claims, if proven, would not necessarily imply that his criminal conviction was invalid.

In a February 26, 2009 Minute Order, the district court denied Jones leave to file the January Motion. Jones responded by filing a document he styled a "Notice of Appeal," which stated he wished to obtain review of the denial of the January Motion. We determined Jones was appealing the district court's denial of leave to file a notice of appeal, and therefore deemed Jones' filing a petition for writ of mandamus.

On the face of things, mandamus is unwarranted because the district court properly denied Jones leave to file. Jones submitted the January Motion more than eight months after the district court entered its dismissal, well past the 60-day deadline imposed by Fed. R. App. P. 4(a)(1)(B), and past the 180-day deadline imposed by Fed. R. App. P. 4(a)(6)(B) for reopening the period to file an appeal. But Jones claims the January Motion was timely under one of two theories: because Rule 4(a)(1)(B)'s 60-day filing period started on the date when he learned of the dismissal (sometime in December 2008), or the date when he received a copy of the dismissal opinion (January 13, 2009), rather than the date when the

district court entered its dismissal (May 28, 2008); or because the January Motion should have been construed as a timely motion for relief from judgment under Fed. R. Civ. P. 60(b)(1).

Neither theory holds water. Jones' contention that we should push back the start of the filing period is based on *Houston v. Lack*, 487 U.S. 266, 270 (1988), where the Supreme Court held a *pro se* prisoner's notice of appeal was "filed" for the purposes of Fed. R. App. P. 4(a) when "he delivered the notice to prison authorities for forwarding," not when the district court actually received the notice. Jones urges us to extend *Houston* to hold that a *pro se* prisoner's period for filing a notice of appeal begins when he receives notice of the judgment from which he wishes to appeal. But the statutory basis for Fed. R. App. P. 4(a), 28 U.S.C. § 2107, precludes such a holding. First, Section 2107(a) states the filing period for a notice of appeal begins "after the entry of [the] judgment, order or decree" that is being appealed. We cannot plausibly hold the "entry" of Jones' dismissal only occurred when he received notice of it. Second, Section 2017(c) allows courts to reopen the filing period if a party does not receive notice of the judgment within 21 days of its entry, but only (at the latest) "upon motion filed within 180 days after entry of the judgment." Jones filed the January Motion more than 180 days after the entry of dismissal, and we may not create equitable exceptions to the 180-day deadline. *See In re Sealed Case (Bowles)*, 624 F.3d 482, 487– 89 (D.C. Cir. 2010).

Nor can we fault the district court for failing to construe the January Motion as a Rule 60(b)(1) motion. Motions under Rule 60(b) request that the district court relieve a party from a final judgment. And even if the district court here was mindful of its "obligation to construe pro se filings liberally,"

*Toolasprashad v. Bureau of Prisons*, 286 F.3d 576, 583 (D.C. Cir. 2002), it did not abuse its discretion by refusing to view the January Motion as seeking such relief. Instead, the Motion gave every indication that Jones was seeking appellate review: the Motion was titled a "Motion for Leave to File Notice of Appeal *pro se* by Plaintiff"; stated that, on "this 31st day of January, 2009, plaintiff is filing a notice of Appeal and requesting the Court of Appeal to accept my 'EXCUSABLE' time[] delay"; and directed its explanation of why the district court erred at this Court. We have previously found that certain motions should have been construed as Rule 60(b) motions, but those motions have always requested relief from the district court. *See, e.g.*, *Hall v. CIA*, 437 F.3d 94, 99 (D.C. Cir. 2006) (construing untimely motion for reconsideration under Rule 59(e) as a Rule 60(b) motion); *Toolasprashad*, 286 F.3d at 582–83 (construing motion for enlargement of time to file a motion for reconsideration as a Rule 60(b) motion).

Because we deny Jones' petition for mandamus, we do not reach the merits of the district court's dismissal under *Heck*. But we note the tension between the district court's ruling and the Supreme Court's observation in *Heck* itself that "a suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." 512 U.S. at 487 n.7. The Court reasoned that, "[b]ecause of doctrines like independent source and inevitable discovery, and especially harmless error, such a § 1983 action, even if successful, would not *necessarily* imply that the plaintiff's conviction was unlawful." *Id.*

\* \* \*

Two years after the district court dismissed Jones' civil case¸ this Court reversed Jones' conviction. *See United States v. Maynard*, 615 F.3d 544 (D.C. Cir. 2010). The Supreme Court recently affirmed that ruling. *See United States v. Jones*, 132 S. Ct. 945 (2012). Because Jones can now show that the dismissal of his civil suit was "based on an earlier judgment that has been reversed or vacated," he might consider filing a motion in district court under Fed. R. Civ. P. 60(b)(5). *See Robinson v. Connell*, No. 9:05-CV-1428 (GLS/ATB), 2010 WL 6268444, at *2 (N.D.N.Y. Sept. 8, 2010) (magistrate report and recommendation) (Second Circuit remanded civil claim, which had been dismissed under *Heck*, to district court to consider motion under Rule 60(b)(5) after criminal sentence was allegedly vacated), *on remand from* No. 08-1992-pr (2d Cir. Aug. 25, 2009). In the alternative, Jones might consider re-filing his complaint. Although Jones expresses concern that re-filing might raise "statute of limitations issues," Pet. Br. 13–14 n.3, the Supreme Court has implied that, even if Jones' claims had accrued before the district court dismissed them under *Heck*, the statutes of limitations should be tolled as long as the bar of *Heck* prevented Jones' suit from going forward. *See Wallace v. Kato*, 549 U.S. 384, 395 n.4 (2007) ("Had petitioner filed suit upon his arrest and had his suit then been dismissed under *Heck*, the statute of limitations, absent tolling, would have run by the time he obtained reversal of his conviction. If under those circumstances he were not allowed to refile his suit, *Heck* would produce immunity from § 1983 liability, a result surely not intended.").

Jones' petition for mandamus, however, is

*Denied.*